# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Case No.: _____

| | |
|---|---|
| TIMBERLINE CONSTRUCTION GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>APTIM FEDERAL SERVICES, LLC,<br><br>Defendant. | DEMAND FOR A JURY TRIAL |

## COMPLAINT

Plaintiff Timberline Construction Group, LLC ("Timberline"), by and through undersigned counsel, hereby files this Complaint against Defendant Aptim Financial Services, LLC ("APTIM") for damages and states as follows:

## PARTIES

1. Plaintiff Timberline is a limited liability company organized and existing under the laws of the State of Alabama, with a principal address of 87 Pardue Rd., Pelham, AL 35124.

2. Upon information and belief, Defendant APTIM is a limited liability company organized and existing under the laws of the State of Delaware, with its principal address at 1200 Brickyard Lane, Suite 202, Baton Rouge, LA 70802.

1

## VENUE AND JURISDICTION

3. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, in that this matter is a civil action between citizens of different states in which the amount in controversy exceeds $75,000.

4. Venue in this Court is proper in the Fort Myers Division of the Middle District of Florida because Defendant is subject to personal jurisdiction in this District at the time the action is commenced and the conduct, acts, and/or omissions alleged herein occurred in Lee County in the State of Florida.

## GENERAL ALLEGATIONS

A. **The Parties Enter Into the Basic Subcontract Agreement**

5. APTIM was awarded a contract ("Prime Contract") by the U.S. Army Corps of Engineers ("USACE") for that certain work of improvement consisting of construction of the Hurricane Ian temporary housing site development in Lee County, Florida (the "Project").

6. On or about April 21, 2023, Timberline entered into a Basic Subcontract Agreement with APTIM, wherein Timberline agreed to provide construction services on the Project in exchange for payment (the "Subcontract"). The Subcontract is attached hereto as **Exhibit A.**

7. The Subcontract contained a firm fixed price lump sum in the amount of $3,656,093.30.

8. Timberline has consistently cooperated with APTIM in scheduling and performing work under the Subcontract to avoid any conflict, delay, or interference with the Project.

9. Section 28 of the Subcontract outlines the procedures for an extension of time, and specifically states:

> To the fullest extent allowed by law, should the Subcontract Work be **delayed, interfered with, resequenced, or disrupted** in the commencement, prosecution and/or completion thereof by Force Majeure, **by the fault of Company or Client, or by any other causes beyond Subcontractor's control**, Subcontractor, as its sole remedy ***shall* be entitled to a reasonable extension of time** only, except that, should delay be caused by events that give rise to a basis for additional compensation actually paid to company by Client under the Prime Contract, then Subcontractor shall be entitled to recover only eighty-five percent (85%) of the compensation that Company actually receives from Client for the delay on account of the Subcontract Work.
>
> ….
>
> Under no circumstances shall Subcontractor be entitled to an extension of time unless a written notice of delay shall have been delivered to Company within seventy-two (72) hours after commencement of the claimed delay.

Exh. A at Section 28 (emphasis added).

10. During the course of its performance on the Project, Timberline encountered multiple delays on the Project, all of which were beyond Timberline's control.

3

11. Pursuant to Section 28 of the Subcontract, Timberline notified APTIM in writing of all unforeseen delays, both potential and actual.

12. Upon information and belief, APTIM in turn notified USACE regarding such delays and sought an extension of time for completion of its work under the Prime Contract.

13. Pursuant to Section 28 of the Subcontract, Timberline was entitled to an extension of time upon providing APTIM with timely written notice of delays.

**B.   Timberline Encounter Unforeseen Scheduling Delays, Including Differing Side Conditions and Design Delays**

14. Throughout the course of the Project there were numerous delays caused by differing site conditions and design issues. These issues led to delays in ordering materials, delays in commencement of construction, increased cost of construction, and required altered construction and/or revisions to the drawings and specifications.

15. Timberline worked cooperatively with APTIM to provide the information related to each delay. Timberline further assisted APTIM in requesting and/or informing USACE of the various project delays and seeking an extension of time to complete the project.

   i.   Timberline Encounters an Unexpected Layer of Limestone Rock

16. APTIM and/or USACE provided Timberline with the geotechnical reports representing the expected site conditions on the Project. However, these reports

4

failed to note a layer of limestone rock. This layer of limestone rock was uncovered during Timberline's excavation work on the Project.

17. The layer of limestone rock was discovered at a depth that impacted the installation of the underground utilities on the site.

18. The Subcontract did not include or build into the schedule time which would be required for excavation into buried rock, unstable, contaminated, hazardous and or saturated soils, including work associated with removal, disposal, or dewatering of any unsuitable soil.

19. The discovery of the layer of limestone rock impeded the progression of the Project and required additional work in order to remove the limestone rock.

20. On May 6, 2023, Timberline promptly provided notice to APTIM detailing the risks of potential and actual delays in the Subcontract work as a result of the discovery of limestone rock.

21. Once notified, APTIM worked closely with Timberline to gather the information related to the delays, and on May 18, 2023, APTIM provided written notice of the delay in a Serial Letter to USACE.

22. The additional work caused by the limestone rock layer increased Timberline's costs to perform the Subcontract by $114,124.60.

      ii.      <u>Unforeseen Design Issues Caused Further Project Delays</u>

23. Design responsibilities on the Project were within the purview of APTIM and USACE and were excluded from Timberline's scope of work.

24. Upon information and belief, the plans and specifications for the Project were submitted for review and permitting to Lee County for approval by USACE. The plans were rejected and required the system to be redesigned in a manner that substantially increased the price of materials, labor and other associated costs and required additional time, including for unavailable materials.

25. Additionally, there were several design issues identified by Timberline to APTIM.

26. Timberline promptly provided notice to APTIM detailing the risks of potential and actual delays in the Subcontract work resulting from the design issues.

27. Once notified, APTIM worked closely with Timberline to gather the information related to the delays, and in turn provided written notice of the delays to USACE on June 8, 2023, June 12, 2023, and June 21, 2023.

28. The delays related to the design deficiencies were ongoing, and therefore it was not possible for Timberline to quantify the precise length of the delay, which Timberline relayed to APTIM as early as May 2023.

**C.   Timberline and APTIM Encounter Delays from Severe and Adverse Weather Conditions**

29. During the course of the Project, there were several instances of severe and adverse weather conditions that led to multiple stand downs, delaying field work and impacting the Project's schedule.

30. The weather delays were evident to APTIM's onsite team, who were also affected by, and were also noted in Timberline's daily reports.

31. On June 10, 2023, APTIM provided USACE with written notice of schedule delays and potential cost impacts resulting from weather related stand downs.

32. APTIM quantified the weather-related delays as 2.96 days.

**D.   APTIM Issues Unsupported CURE Notices**

33. On May 25, 2023, APTIM issued a Cure Notice related solely to delays in the Project that were beyond Timberline's control.

34. On May 26, 2023, Timberline provided a Corrective Action Plan and worked diligently to complete its scope of work by the existing substantial completion date, despite the delays it was incurring on the Project that were beyond its control.

35. On June 8, 2023, APTIM issued a second Cure Notice related to the installation of a 36" reinforced concrete pipe run, which had to be reworked.

36. On the same day, Timberline immediately issued a response to the Cure Notice setting forth the factual inaccuracies of APTIM's June 8, 2023 Cure Notice.

37. Due to the delays caused by differing site conditions and design issues, Timberline was forced to perform its work under a condensed schedule. This resulted in APTIM personnel being added to the project to "assist" Timberline with meeting the original substantial completion deadline instead of an extended deadline.

38. The improper installation was performed by APTIM personnel who were mobilized to "assist" Timberline in completing its work – not by Timberline personnel.

39. Timberline personnel did not oversee the improper installation of the reinforced concrete pipe. However, once Timberline became aware of the issue, it was corrected in less than one hour.

E. **APTIM Improperly Terminates the Subcontract Agreement for Cause**

40. APTIM and USACE were notified in writing of the multiple delays Timberline encountered on the project due to causes that were beyond Timberline's control, and for which Timberline was entitled to a reasonable extension of time to complete its work under the Subcontract.

41. On June 27, 2023, despite Timberline's request for extensions of time to APTIM, and APTIM's subsequent request for extensions of time to USACE, APTIM issued a Notice of Termination for Default letter to Timberline ("Notice of Termination").

42. APTIM's Notice of Termination represented that the termination of Timberline's Subcontract was due to scheduling issues and performance issues.

However, the Notice of Termination did not provide any specific details regarding scheduling or performance issues.

43. Section 31 of the Subcontract requires that prior to bringing suit on any claim under the Subcontract the party asserting the claim must submit the claim to the other party. Once a claim is presented, the Parties must engage in direct negotiations to resolve the Claim for a period of no less than 30 days.

44. On July 10, 2023, Timberline submitted a notice of claim to APTIM and attempted, in good faith, to resolve the issues stated herein. However, to date, the Parties have been unable to resolve Timberline's claims.

45. All conditions precedent to the relief requested herein have been performed or have occurred.

## COUNT I – BREACH OF CONTRACT

46. Plaintiff Timberline realleges and incorporates the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47. Timberline and APTIM entered into the Subcontract, a valid and binding contract that was supported by valuable consideration.

48. At the time of termination, Timberline had fully performed all of its obligations under the Subcontract, including all conditions precedent to payment.

49. APTIM's termination of the Subcontract for default was improper and a breach of the terms of the Subcontract.

50. As a direct result of APTIM's breach, Timberline has incurred damages in an amount exceeding $3,163,497.97, plus pre- and post-judgment interest, costs, reasonable attorneys' fees, and any other relief this Court deems just.

## COUNT II – UNJUST ENRICHMENT/QUANTUM MERUIT

51. Plaintiff Timberline realleges and incorporates the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

52. In the alternative, APTIM has benefited and been unjustly enriched by virtue of Timberline's performing work on the Project, for which APTIM has failed and refused to pay Timberline.

53. APTIM knew about and accepted the benefit of Timberline's performance without objection, and Timberline's furnishing of labor, services, and materials was not gratuitous.

54. APTIM accepted the benefit at the expense and detriment of Timberline, with reasonable notice that Timberline expected to be paid for the services and labor.

55. APTIM has failed to pay Timberline for the services and labor that Timberline provided for the Project.

56. APTIM has been unjustly enriched by the benefit Timberline conferred upon it because APTIM has failed to pay Timberline for the benefit.

57. As a direct and proximate result of APTIM's unjust enrichment, Timberline has incurred damages and demands judgment in an amount in excess of

72084201;4

$3,163,497.97, plus pre- and post-judgment interest, costs, reasonable attorneys' fees, and any other relief this Court deems just.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

58. Plaintiff Timberline realleges and incorporates the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

59. The Subcontract is a valid and enforceable written contract. At all times, Timberline has abided by and acted in compliance with the terms of the Subcontract.

60. As set forth above, APTIM breached the terms of the Subcontract and the implied covenant of good faith and fair dealing that is part of every contract governed by Florida law by failing to provide Timberline with an extension of time in compliance with Section 28 of the Subcontract and by intentionally and improperly terminating Timberline for default.

61. In doing so, APTIM failed to comply with its contractual responsibility to act in good faith in accordance with the Subcontract, and acted arbitrarily, capriciously and in a manner inconsistent with the reasonable expectation of the parties. APTIM's conscious and deliberate acts unfairly frustrated the agreed common purpose of the Subcontract and disappointed the reasonable expectations of Timberline, thereby depriving Timberline of the benefits of the agreement.

62. As a direct result of APTIM's breach, Timberline has incurred damages in an amount exceeding $3,163,497.97, plus pre- and post-judgment interest, costs, reasonable attorneys' fees, and any other relief this Court deems just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Timberline prays for the following relief:

a. Count I – Judgment against APTIM in an amount of at least $3,163,497.97 to be proven at trial, plus pre- and post-judgment interest;

b. Count II – In the alternative to relief requested under Count I, judgment against APTIM in an amount of at least $3,163,497.97 to be proven at trial, plus pre- and post-judgement interest;

c. Count III – Judgment against APTIM in an amount of at least $3,163,497.97 to be proven at trial, plus pre- and post-judgment interest;

d. An award of costs and reasonable attorneys' fees as may be authorized by contract or statute; and

e. Any such other and further relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Date: August 10, 2023                    Respectfully submitted,

>                    */s/ Eric D. Coleman*
>                    ERIC D. COLEMAN
>                    Florida Bar No.: 124963
>                    SELENA A. GIBSON
>                    Florida Bar No.: 0299325
>                    201 E. Las Olas Boulevard,
>                    Suite 1800
>                    Fort Lauderdale, Florida 33301
>                    Telephone: (954) 463-2700
>                    Facsimile: (954) 463-2224
>                    Email: Eric.Coleman@Akerman.com
>                    Email: Selena.Gibson@Akermman.com
>
>                    *Counsel for Plaintiffs Timberline Construction Group, LLC*