# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**UNITED STATES OF AMERICA**,
for the use and benefit of
**TIMBERLINE CONSTRUCTION GROUP, LLC**,

    Plaintiff,

v.                                                                                          2:23-cv-607-JLB-NPM

**APTIM FEDERAL SERVICES, LLC**,
**LIBERTY MUTUAL INSURANCE COMPANY**,
and **BERKLEY INSURANCE COMPANY**,

    Defendants.

---

## ORDER

This is a breach-of-contract and Miller Act case arising from a Hurricane Ian recovery project for temporary housing in Lee County, Florida. The United States Army Corp of Engineers contracted with Brice Aptim JV, LLC ("Brice Aptim") to build the temporary housing site. In conjunction, Brice Aptim obtained a Miller Act payment bond under which defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Berkley Insurance Company ("Berkley") acted as sureties to ensure that certain subcontractors and suppliers would be compensated for their goods and services. Brice Aptim entered into a subcontract with one of its members, APTIM Federal Services, LLC ("APTIM"), and APTIM, in turn, entered into a contract with plaintiff Timberline Construction Group, LLC ("Timberline"). Claiming that APTIM breached the contract by failing to pay more than $3.5 million

for goods and services, Timberline asserts express and implied breach-of-contract claims against APTIM, and a Miller Act claim against Liberty Mutual and Berkley. (Doc. 18).

We are presented with four motions: (1) Timberline's unopposed motion to amend the complaint and join Brice Aptim as a defendant (Doc. 49); (2) APTIM's unopposed motion for extension of time to amend its answer to assert a counterclaim (Doc. 52); (3) APTIM's opposed motion to transfer venue (Doc. 28); and (4) Liberty Mutual and Berkley's opposed motion to transfer venue and motion to dismiss (Doc. 37). The unopposed motions[1] for leave to amend Timberline's complaint and for leave to amend APTIM's answer are **granted**.[2] Against that backdrop, we address defendants' requests to transfer venue.

Pursuant to 28 U.S.C. § 1404(a), defendants argue that transfer of this case to the middle district of Louisiana[3] is warranted under the mandatory forum-selection clause of the subcontract between APTIM and Timberline, which provides in

---

[1] Defendants did not respond to Timberline's motion to amend the complaint, nor did Timberline respond to APTIM's motion for an extension of time to amend its answer. As such, the motions are treated as unopposed. *See* M.D. Fla. R. 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

[2] While the motion to amend the complaint seeks to join a party—Brice Aptim—and Timberline should have argued that joinder is appropriate under Federal Rule of Civil Procedure 20, a review of the proposed third amended complaint shows that Rule 20 is satisfied.

[3] The Middle District of Louisiana is a proper venue because APTIM is domiciled in Baton Rouge, Louisiana. (Doc. 49-1 ¶ 2).

relevant part:

> If the Parties are unable to resolve Claims by direct negotiation, the sole and **exclusive venue for any litigation** between Company [APTIM] and Subcontractor [Timberline] **relating to or arising from any Subcontract**, these T&C's, any Project, or any Subcontract Work, except as provided in the following paragraph, **shall be a United States District Court located in Louisiana**, or should such court(s) lack jurisdiction, Louisiana District Court.

(Doc. 49-3, p. 24) (emphasis added).

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Supreme Court has held that the application of § 1404(a) principles is the appropriate means by which to analyze a valid forum-selection clause requiring transfer to another federal district court. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). Therefore, it follows that "[f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

Nevertheless, Timberline asserts that venue in this district is appropriate since the Miller Act vests venue in the "United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B); (Doc. 49-1 ¶ 9). Arguably, the plain text of the Miller Act requires that any such claim be litigated in the Middle District of Florida as it states "a civil action brought under this subsection **must** be brought" in the district where work was performed. § 3133(b)(3) (emphasis added). And if we were writing on a blank slate, we might reach that conclusion. But we are not. Instead, binding precedent directs us to give the forum-selection clause the same force we would generally give it in any other civil action. This is so because the Miller Act's venue provision is "merely a venue requirement" and not jurisdictional. *F.D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116 (1974). And as the court held in *In re Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979),[4] private parties may agree to litigate Miller Act claims in other venues in accordance with a valid forum-selection clause. Thus, we employ a traditional, forum-selection-clause analysis.

The parties do not dispute that the forum-selection clause is valid, that the claims fall within its scope, and the clause is mandatory. (Doc. 28 at 3; Doc. 37 at 3;

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Furthermore, to date, the Eleventh Circuit has never taken up the issue.

Doc. 44 at 4). *See United States & Hamilton Roofing, Inc. v. Cincinnati Ins. Co.*, No. 6:20-cv-2360-CEM-GJK, 2022 WL 1801193, *2 (M.D. Fla. Mar. 25, 2022) (noting that analyzing a forum-selection clause begins with determining its validity, its mandatory or permissive nature, and whether the claims fall within its scope). Furthermore, the parties agree that the private-interest factors typically weighed in the balance of a change-of-venue analysis are not considered when, as here, there is a valid and applicable forum-selection clause. *See id.* at *4 (noting that if a valid and applicable forum-selection clause exists, the court must only consider "arguments about public-interest factors" and not the parties' private interests); *see also Atl. Marine*, 571 U.S. at 51 (without "extraordinary circumstances" a forum-selection should be enforced). Accordingly, we are left with weighing the public-interest factors [5] and assessing whether any extraordinary circumstances might justify treating the forum-selection clause as a nullity.

Turning to this analysis, we emphasize that Timberline "bears the burden of

---

[5] The public interest factors include:

> (1) the administrative difficulties stemming from court congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Kolawole v. Sellers*, 863 F.3d 1361, 1372 (11th Cir. 2017) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6. (1981)).

establishing that the transfer to the forum for which the parties bargained for is unwarranted." *Id.* at 4 (citing *Atl. Marine*, 571 U.S. at 63). But Timberline falls short—as neither the public interest nor any extraordinary circumstance lead us to disregard the parties' forum-selection clause. To begin with, there are far more administrative difficulties flowing from this district's congestion than that of the Middle District of Louisiana. Indeed, we are often recognized as carrying one of the heaviest overall caseloads in the United States.[6] And that was before we became inundated with Hurricane Ian cases, which are still being filed almost two years later. Moreover, this district has long been designated a judicial emergency, with the Administrative Office continually reporting to Congress that we should be allotted at least five more district court judges.[7] Worse yet, we currently have two vacancies and will soon have two more. Thus, this factor weighs in favor of transfer.

On the other hand, we agree with Timberline that Florida has an interest in having a local controversy—stemming from a Hurricane Ian recovery project for temporary housing for the state's residents—to be decided at home. Therefore, this factor weighs against transfer. However, we do not find that a Florida court's familiarity with the law governing this case warrants keeping it here. Timberline has

---

[6]  *See* Max Marbut, *Middle District of Florida Among Nation's Top Caseloads*, Jacksonville Daily Record, (Jan. 27, 2023), https://www.jaxdailyrecord.com/news/2023/jan/27/middle-district-of-florida-among-nations-top-caseloads/

[7]  *See* Judge Information Center, Trac Reports, https://trac.syr.edu/tracreports/judge/364/

asserted a Miller Act claim, which poses a federal question, and district courts routinely apply the often-similar, breach-of-contract laws of other states.[8] Moreover, like Florida federal judges, Louisiana judges are no stranger to litigation that results from post-hurricane recovery efforts.[9] Thus, this factor is neutral.

With respect to the avoidance of unnecessary problems concerning potential conflicts of law or the application of foreign law, the parties do not address this factor and we are not aware of any potential problem on this score. So this factor is also neutral. Finally, Timberline cannot show that transferring this case would unfairly burden Louisiana citizens with jury duty. This is a federal construction project initiated by the United States Army Corp of Engineers that utilizes federal tax dollars, and APTIM, who contracted with Timberline, is a Louisiana company. But more importantly, the subcontract between the parties waives the right to a trial by jury. (Doc. 49-3 at 24).[10] Thus, this factor weighs in favor of transfer, and on

---

[8] *See, e.g.*, *Inland & Offshore Contractors, Ltd. v. Hasselman*, No. 15-5675, 2016 WL 852482, *5 n.19 (E.D. La. Mar. 4, 2016) (finding plaintiff was entitled to damages pursuant to breach-of-contract claim under Florida law); *Ross v. Digioia*, No. 11-1827, 2012 WL 5877843, *3 (E.D. La. Nov. 20, 2012) (considering a breach-of-contract claim on summary judgment, and noting it was inconsequential whether Florida or Louisiana law applied to the contract dispute since the parties were protected under either state's laws).

[9] *See Greenup Indus. LLC v. Five S Grp., LLC*, No. 22-2203, 2023 WL 2540287 (E.D. La. Mar. 16, 2023) (considering breach-of-contract and Miller Act claims related to a hurricane storm damage risk reduction project); *see also Brian German Constr., Inc. v. LJC Def. Contracting, Inc.*, No. 06-10749, 2007 WL 1890666 (E.D. La. June 26, 2007) (considering dispute between subcontractor and contractor regarding temporary roofing on housing in south Louisiana in the wake of Hurricane Katrina).

[10] The parties agree that this matter would not be tried to a jury. (Doc. 41 at 2).

balance, the public-interest factors do not weigh against enforcement of the agreed upon forum-selection clause. *See Atl. Marine*, 571 U.S. at 63-64 (the public-interest factors "rarely defeat" enforcement of a forum-selection clause).

There is also nothing extraordinary about this matter that might justify our writing the forum-selection clause out of the contract. If the Miller Act—as construed by binding authority—required the related Miller Act claim to be litigated here, we may have been presented with an extraordinary circumstance compelling denial of the change-of-venue motions. But this is not the case. The forum-selection clause is an integral part of the benefit of the parties' bargain. And as sophisticated commercial enterprises, we have no doubt that the parties were keenly aware of the implications of the forum-selection clause when they entered the contract.

Without any specificity, Timberline points to potential impediments to the presentation of live testimony at trial, but this was an obvious consequence of the forum-selection clause when Timberline consented to it. And with Timberline based in Alabama, and APTIM in Louisiana, it appears that a trial in Baton Rouge, Louisiana—rather than Fort Myers, Florida—would be more convenient for the principal parties to this dispute. As *Atlantic Marine* directs, enforcement is the norm, not the exception. *Id.* at 59-60.

Accordingly, Timberline's unopposed motion to amend the complaint and join Brice Aptim as a defendant (Doc. 49) is **GRANTED**. The clerk is directed to

separately docket the third amended complaint attached to Timberline's motion (Doc. 49-1). APTIM's unopposed motion for extension of time to amend its answer to assert a counterclaim (Doc. 52) is **GRANTED**. APTIM may amend its pleading when it responds to the third amended complaint within the time permitted by rule. APTIM's motion to transfer venue (Doc. 28) is **GRANTED**. Liberty Mutual and Berkley's motion to transfer venue and motion to dismiss (Doc. 37) is **GRANTED** as to their request to transfer venue but, given the forthcoming amended complaint, otherwise **DENIED without prejudice**.

If no objections are filed within 14 days of this order, which is the time allotted under Civil Rule 72(a), the clerk is further directed to transfer this action to the United States District Court for the Middle District of Louisiana and to close the case. If any objections are timely filed, then the clerk is directed to withhold the transfer until so ordered by the District Judge.[11]

---

[11] Generally, parties who timely object to a magistrate judge's action are entitled to clear-error review. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72 advisory committee notes (explaining that Rule 72(a) objections correspond to matters referred under § 636(b)(1)(A), and Rule 72(b) objections correspond to matters referred under § 636(b)(1)(B)); *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 176 (N.D. Ill. 1992) ("The terms 'dispositive' or 'nondispositive' in Rule 72 do not create categories separate from the statute which Rule 72 implements."). There are eight exceptions; and to view the list as merely illustrative is to leave it to the courts to rewrite the statute and create a patchwork of inconsistent regimes throughout the country. *See* 28 U.S.C. § 636(b)(1)(A); *Wachovia Bank, N.A. v. Deutsche Bank Tr. Co. Americas*, 397 F. Supp. 2d 698, 701 (W.D.N.C. 2005) ("[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine any pretrial matter pending before the court, except' a very specific list of eight matters. Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than 'any…except.'").

A transfer-of-venue motion is not among the eight exceptions. Thus, a "Magistrate Judge

                    **ORDERED** on July 31, 2024

                    */s/ Nicholas P. Mizell*
                    NICHOLAS P. MIZELL
                    United States Magistrate Judge

---

is empowered to issue the transfer order, which is non-dispositive ….” *Bartko v. Wheeler*, No. 1:13-CV-1006, 2014 WL 29441, *1 n.1 (M.D.N.C. Jan. 3, 2014), *aff'd*, 589 F. App'x 181 (4th Cir. 2015) (collecting cases). Indeed, by only excepting Rule 12(b)(6) motions and not all Rule 12(b) motions, the federal-magistrate-judges statute (28 U.S.C. § 636) provides that magistrate judges may dispose of jurisdictional and venue motions—Rules 12(b)(1) through (3)—by order; and a 28 U.S.C. § 1404 transfer-of-venue motion likewise concerns forum-selection issues and not the merits of a claim or defense.